**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

MARK ROGOLINO, individually and
on behalf of all other similarly situated,

    *Plaintiff,*

    v.

WALMART, INC.,

    *Defendant*.

**CASE NO. 2:24-cv-14308-AMC**

**WALMART INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OR,**
**IN THE ALTERNATIVE, MOTION TO DISMISS COUNT I**

Bret R. Vallacher
FL Bar No. 1011122
MASSEY & GAIL LLP
1000 Maine Ave SW, Suite 450
Washington, D.C. 20024
(202) 780-0351 (telephone)
(312) 379-0467 (facsimile)
bvallacher@masseygail.com

Suyash Agrawal (Admitted Pro Hac Vice)
Paul Berks (Admitted Pro Hac Vice)
MASSEY & GAIL LLP
50 E. Washington Street, Suite 400
Chicago, Illinois 60602
(312) 283-1590 (telephone)
(312) 379-0467 (facsimile)
sagrawal@masseygail.com
pberks@masseygail.com

*Attorneys for Defendant Walmart, Inc.*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................ 2

    A.    Rogolino's Allegations ................................................................... 2

    B.    Walmart's Online Customers Must Consent To Arbitration Before Making Any Purchases ................................................................ 3

        1.    Rogolino—And All Putative Class Members—Accepted The Terms Of Use ...... 3

        2.    The Terms Of Use Contain A Mandatory Arbitration Provision And Class Action Waiver ................................................. 4

ARGUMENT ....................................................................................................... 5

I.    THE CLAIMS ASSERTED IN THE COMPLAINT MUST BE RESOLVED THROUGH ARBITRATION ............................................................................. 5

    A.    The Arbitration Agreement Is Valid And Enforceable ........................................... 6

    B.    The Enforceable Arbitration Agreement Covers This Dispute............................. 11

    C.    The Court Should Compel Arbitration On An Individual Basis And Stay This Case.................................................................... 13

II.    IF THE COURT ELECTS NOT TO COMPEL ARBITRATION, COUNT I SHOULD BE DISMISSED DUE TO THE FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES .................. 14

CONCLUSION.................................................................................................... 17

## TABLE OF AUTHORITIES

### Cases

*Adelstein v. Walmart Inc.*,
   No. 1:23-cv-00067, 2024 WL 1347043 (N.D. Ohio Mar. 30, 2024) ...................................... 11

*Am. Exp. Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013) ........................................................................................................ 13

*Anderson v. Amazon.com, Inc.*,
   490 F. Supp. 3d 1265 (M.D. Tenn. 2020) ........................................................................ 11

*Arencibia v. AGA Serv. Co.*,
   533 F. Supp. 3d 1180 (S.D. Fla. 2021),
   *aff'd*, No. 21-11567, 2022 WL 1499693 (11th Cir. May 12, 2022) .......................................... 7

*Arencibia v. AGA Serv. Co.*,
   No. 21-11567, 2022 WL 1499693 (11th Cir. May 12, 2022) ........................................... 7, 10

*Bazemore v. Jefferson Cap. Sys., LLC*,
   827 F.3d 1325 (11th Cir. 2016) ..................................................................................... 6, 7

*Bd. of Trs. of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Glob. Mkts., Inc.*,
   622 F.3d 1335 (11th Cir. 2010) ......................................................................................... 12

*BJ's Wholesale Club, Inc. v. Bugliaro*,
   273 So. 3d 1119 (Fla. 3d DCA 2019) ................................................................................ 16

*Caley v. Gulfstream Aerospace Corp.*,
   428 F.3d 1359 (11th Cir. 2005) ................................................................................. 6, 7, 14

*Cooper v. MRM Inv. Co.*,
   367 F.3d 493 (6th Cir. 2004) .............................................................................................. 7

*Dept. of Revenue v. Nemeth*,
   733 So. 2d 970 (Fla. 1999) ................................................................................................. 15

*Derriman v. Mizzen & Main LLC*,
   710 F. Supp. 3d 1129 (M.D. Fla. 2023) ................................................................... 7, 8, 9, 10

*DIRECTV, Inc. v. Imburgia*,
   577 U.S. 47 (2015) ............................................................................................................. 13

*Epic Sys. Corp. v. Lewis*,
   584 U.S. 497 (2018) ....................................................................................................... 5, 13

*Erie R.R. Co. v. Tompkins*,
   304 U.S. 64 (1938) ............................................................................................................ 15

*Fox v. Ritz-Carlton Hotel Co., L.L.C.*,
    977 F.3d 1039 (11th Cir. 2020)............................................................................... 15, 16, 17

*Fridman v. 1-800 Contacts, Inc.*,
    554 F. Supp. 3d 1252 (S.D. Fla. 2021) ................................................................................ 7, 8

*Hearn v. Comcast Cable Commc'ns, LLC*,
    992 F.3d 1209 (11th Cir. 2021)..................................................................................................... 6

*Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*,
    154 F. Supp. 3d 1318 (S.D. Fla. 2016) ........................................................................................ 6

*John B. Goodman Ltd. P'ship v. THF Constr., Inc.*,
    321 F.3d 1094 (11th Cir. 2003)........................................................................................... 6, 13

*JPay, Inc. v. Kobel*,
    904 F.3d 923 (11th Cir. 2018)............................................................................................ 12, 13

*Kravets v. Anthropologie, Inc.*,
    No. 22-cv-60443-BLOOM/Valle, 2022 WL 1978712 (S.D. Fla. June 6, 2022) ................ 9, 10

*Lambert v. Austin Ind.*,
    544 F.3d 1192 (11th Cir. 2008)................................................................................................... 6

*Maynez v. Walmart, Inc.*,
    479 F. Supp. 3d 890 (C.D. Cal. 2020)................................................................................ 11, 12

*MetroPCS Commc'ns, Inc. v. Porter*,
    273 So. 3d 1025 (Fla. 3d DCA 2018))........................................................................................ 7

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
    473 U.S. 614 (1985)...................................................................................................................... 6

*Reiterman v. Abid*,
    26 F.4th 1226 (11th Cir. 2022)..................................................................................................... 6

*Sarnoff v. Fla. Dep't of Highway Safety and Motor Vehicles*,
    825 So. 2d 351 (Fla. 2002)......................................................................................................... 15

*Sims v. Clarendon Nat'l Ins. Co.*,
    336 F. Supp. 2d 1311 (S.D. Fla. 2004) ..................................................................................... 12

*Smith v. Spizzirri*,
    601 U.S. 472 (2024)................................................................................................................... 14

*State Dep't of Highway Safety and Motor Vehicles v. Rendon*,
    957 So. 2d 647 (Fla. 3d DCA 2007) .................................................................................. 14, 16

*State ex rel. Devlin v. Dickinson*,
    305 So. 2d 848 (1st DCA 1975)................................................................ 16

*Valiente v. StockX, Inc.*,
    645 F. Supp. 3d 1331 (S.D. Fla. 2022) ..................................................... 7

**Statutes**

9 U.S.C. § 2 ................................................................................................... 6

9 U.S.C. § 3 ................................................................................................. 14

9 U.S.C. § 4 ................................................................................................. 14

Fla. Stat. § 215.26 (2005) ............................................................................ 15

**Codes**

Fla. Admin. Code R. 12A-1.045 ........................................................... 1, 2, 12

Fla. Admin. Code R. 12-26.002 ................................................................. 14

## INTRODUCTION

Plaintiff Mark Rogolino placed an online order from Walmart, Inc. Although he allegedly had the option to pick up his purchase in one of Walmart's retail stores, Rogolino chose to have the item delivered to him for an additional fee. He alleges that Walmart charged him tax on the entire cost of the purchase, including the delivery fee. He asserts that by collecting sales taxes on that delivery fee, Walmart violated Rule 12A-1.045 of the Florida Administrative Code. *See generally* Compl. (ECF No. 1-1). On behalf of a putative class of similarly situated customers, Rogolino sued Walmart for negligence (Count I) and sought declaratory and injunctive relief (styled as "Count II").

Rogolino's complaint should be stayed because he, and all members of the purported class, agreed to arbitrate their claims individually against Walmart. Specifically, all of Walmart's online customers, including Rogolino, agreed to Walmart's Terms of Use before completing their purchases. Those Terms of Use provide in relevant part:

- "ALL DISPUTES ARISING OUT OF OR RELATED TO . . . ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART . . . WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION," Ex. 1 (ECF No. 12-3) § 20 (emphasis in original);

- "YOU AND WALMART AGREE THAT EACH IS WAIVING THE RIGHT TO SUE IN COURT." *Id.* (emphasis in original)

- "YOU AND WALMART AGREE THAT ANY ARBITRATION . . . WILL TAKE PLACE ON AN INDIVIDUAL BASIS," *id.* (emphasis in original).

By agreeing to Walmart's Terms of Use, Rogolino not only agreed to arbitrate claims against Walmart, he also waived the right to bring claims "as a class arbitration, class action, collective action, or Mass Action to the maximum extent permitted by law." *Id.* § 20(B). Accordingly, pursuant to the Federal Arbitration Act, Rogolino's claims should be compelled to arbitration on an individual basis, and this case should be stayed until the arbitration process is complete.

In the alternative, if the case is not stayed in favor of arbitration, Count I should be dismissed because Florida law requires that taxpayers exhaust administrative remedies before suing for a refund of allegedly improper sales tax.

## FACTUAL BACKGROUND

### A.    Rogolino's Allegations

Walmart operates brick-and-mortar and online marketplaces that sell a variety of consumer products and goods. Compl. ¶ 12. Walmart's online customers can have their purchases delivered to their homes. Sometimes, Walmart gives online customers the option of picking up their purchases from one of Walmart's brick-and-mortar locations. *Id.* ¶ 13.

Rogolino alleges that he placed an online order with Walmart on November 24, 2023. *Id.* ¶ 17. Although Rogolino could have picked up his order at one of Walmart's store locations, he chose to pay a $19.95 delivery fee and have the product delivered. *Id.* ¶¶ 17–18. He alleges that Walmart collected a 7% sales tax on the total cost of his purchase, which included the delivery fee. *Id.* ¶¶ 19, 21. According to Rogolino, under Rule 12A-1.045 of the Florida Administrative Code, it is unlawful to collect sales tax on delivery fees charged to customers who could have avoided the fee by picking up the purchase. *Id.* ¶¶ 20, 52. Rogolino purports to represent a putative class of "[a]ll persons in Florida who, during the four years prior to the filing of this lawsuit, [were] charged by Defendant and paid sales tax on a delivery fee that was separately stated on an invoice or receipt when the person had the option to pick up the order at one of Defendant's locations in Florida." *Id.* ¶ 28.

In Count I, Rogolino asserts a claim for "negligence," seeking "compensatory and punitive damages, including pre-judgment interest, and costs of this action," *Id.* ¶ 47; *see also id.* ¶¶ 38–47. For compensatory relief, Rogolino apparently seeks the return of "the amount of the unlawfully collected taxes." *Id.* ¶ 5. In Count II, Rogolino seeks declaratory and injunctive relief

2

to enjoin Walmart from collecting sales tax in Florida on delivery fees that are separately stated on an invoice and can be avoided at the option of the consumer, *id.* ¶ 58.

### B.  Walmart's Online Customers Must Consent To Arbitration Before Making Any Purchases

#### 1.  Rogolino—And All Putative Class Members—Accepted The Terms Of Use

To place his Walmart order, Rogolino was required to complete a standard checkout process ("Check-Out Process"). *See* Declaration of Anil Kumar Garikepati ("Garikepati Decl.") (ECF No. 12-2) ¶¶ 2–5, 9. The final page of the Check-Out Process specifically instructs the customer to "Review" the information on the page, which states: "By placing this order, you agree to our Privacy Policy and Terms of Use" ("Acknowledgment Language"). *Id.* ¶ 5. A customer who clicks on the underlined words "Privacy Policy" or "Terms of Use" (which are hyperlinks within the Acknowledgment Language) is taken to Walmart's Privacy Policy or Terms of Use ("TOU Agreement" or "Agreement"), respectively. *Id.* ¶ 6. The Acknowledgement Language is located directly above the "Place Order" button, as shown in the screenshot below:



*Id.* ¶¶ 5, 8. Consumers (including Rogolino) must click the blue "Place Order" button to complete the transaction. *Id.* ¶ 8. Rogolino made a purchase by clicking on the blue Place Order button directly below the Acknowledgment Language. *Id.*

Throughout the entire class period of July 24, 2020, through July 24, 2024, the "Check Out Process" has remained the same as described above. *See* Garikepati Decl. ¶ 9. Accordingly, each of the putative class members also agreed to Walmart's Terms of Use.

       **2.**      **The Terms Of Use Contain A Mandatory Arbitration Provision And Class Action Waiver**

Rogolino placed his order on November 24, 2023. Compl. ¶ 17. The November 22, 2023, TOU Agreement was in effect on that date. *See* Garikepati Decl. ¶ 7. The first page of the Agreement states in all capital letters that it includes a mandatory-arbitration provision:

> IMPORTANT: THESE TERMS OF USE CONTAIN A MANDATORY ARBITRATION PROVISION THAT, AS FURTHER SET FORTH IN SECTION 20 BELOW, REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES. THIS MEANS THAT YOU AND WALMART ARE EACH GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT OR IN CLASS ACTIONS OF ANY KIND. IN ARBITRATION, THERE IS NO JUDGE OR JURY AND THERE IS LESS DISCOVERY AND APPELLATE REVIEW THAN IN COURT.

Ex. 1 at 1. Section 20 of the Terms of Use is an "Arbitration Agreement," which states:

> ## 20. Disputes, Arbitration, and Applicable Law
>
> PLEASE READ THIS SECTION CAREFULLY. IT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT.
>
> **Arbitration Agreement.**
>
> EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT, YOU AGREE THAT ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART, INCLUDING ANY PRODUCTS OR SERVICES OFFERED OR SOLD BY WALMART OR THE WALMART ENTITIES, WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION BEFORE A SINGLE NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY. EXCEPT AS OTHERWISE PROVIDED IN THESE TERMS OF USE, YOU AND WALMART AGREE THAT EACH IS WAIVING THE RIGHT TO SUE IN COURT AND TO HAVE A TRIAL BY A JURY. This paragraph may be referred to as the Arbitration Agreement in these Terms of Use.

*Id.* § 20. Section 20 also includes a class action waiver, preventing Rogolino (or any other member of the putative class) from participating in a class action or class arbitration:

> B.   **Class Action and Mass Action Waiver.**
>
> YOU AND WALMART AGREE THAT ANY ARBITRATION REQUIRED BY THE ARBITRATION AGREEMENT WILL TAKE PLACE ON AN INDIVIDUAL BASIS. You and

> Walmart each agree to waive the right to have any dispute or claim subject to the Arbitration Agreement brought, heard, administered, resolved, or arbitrated as a class arbitration, class action, collective action, or Mass Action to the maximum extent permitted by law. "Mass Action" means a situation in which a party is represented by a law firm or other representative, or a collection of law firms or other representatives, that has initiated more than one hundred (100) arbitration Demands with common questions of law or fact against Walmart within 180 days of initiating your arbitration Demand. This paragraph may be referred to as the "Class Action and Mass Action Waiver" in these Terms of Use. Nothing in these Terms of Use precludes you from bringing issues to the attention of federal, state, or local government agencies and, if the applicable law allows, such agencies may seek relief against Walmart for you.

*Id.* § 20(B). The various updates to the Terms of Use throughout the putative class period reflect stylistic changes, but they all require the customer to resolve through individual arbitration any claims related to, or arising out of, the relationship between the customer and Walmart. *See* Garikepati Decl. ¶ 7; Exhibits 2 (ECF No. 12-4) through 32 (ECF No. 12-34).

On November 7, 2024, Walmart's counsel advised Rogolino's counsel that Rogolino is bound by the arbitration agreement contained in the Terms of Use. *See* Vallacher Decl. (ECF No. 12-35) ¶ 2. Accordingly, Rogolino was asked to voluntarily dismiss his pending case and, instead, proceed in arbitration. Rogolino's counsel declined. *Id.*

**ARGUMENT**

I.   **THE CLAIMS ASSERTED IN THE COMPLAINT MUST BE RESOLVED THROUGH ARBITRATION**

The Federal Arbitration Act ("FAA") establishes "a liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (internal quotation marks and citation omitted). The FAA mandates that a written arbitration provision included in a

"contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, "a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute." *John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003).

The Court must "compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). Courts in the Eleventh Circuit treat "motions to compel arbitration similarly to motions for summary judgment." *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215 n.3 (11th Cir. 2021). Thus, "district courts may consider evidence when determining whether an arbitration agreement exists." *See Reiterman v. Abid*, 26 F.4th 1226, 1233 (11th Cir. 2022).

### A.     The Arbitration Agreement Is Valid And Enforceable

The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1325 (S.D. Fla. 2016) (same) (internal quotation marks and citation omitted). "The threshold question of whether an arbitration agreement exists at all is simply a matter of contract." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (internal quotation marks and citation omitted). "Thus, in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005). Regarding the "threshold issue of whether Plaintiff assented to the Terms . . .

Florida's law of contract formation applies to first determine the existence of a contract." *Valiente v. StockX, Inc.*, 645 F. Supp. 3d 1331, 1337 (S.D. Fla. 2022); *accord Bazemore*, 827 F.3d at 1330 ("[W]e consistently have held that state law governs the issue of the existence of an agreement to arbitrate under the FAA . . . ."). "The 'federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law.'" *Caley*, 428 F.3d at 1368 (quoting *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004)).

Under Florida law, Rogolino's agreement with Walmart is considered a "browsewrap agreement." *See Derriman v. Mizzen & Main LLC*, 710 F. Supp. 3d 1129, 1138–39 (M.D. Fla. 2023) (explaining that a "browsewrap agreement" is formed when "a website . . . provides a link to terms and conditions and does not require the purchaser to indicate acknowledgement during the checkout process"); *accord Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1190 n.3 (S.D. Fla. 2021) (internal quotation marks and citations omitted), *aff'd*, No. 21-11567, 2022 WL 1499693 (11th Cir. May 12, 2022). A purchaser can enter into a browsewrap agreement by making an online purchase "without visiting the terms and conditions page." *Derriman*, 710 F. Supp. 3d at 1138–39 (citing *Fridman v. 1-800 Contacts, Inc.*, 554 F. Supp. 3d 1252, 1259 (S.D. Fla. 2021)).

"Under Florida law, a browsewrap agreement is enforceable 'when the purchaser has actual knowledge of the terms and conditions, or **when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice**.'" *Id.* at 1139 (emphasis added) (quoting *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. 3d DCA 2018)); *see also Arencibia v. AGA Serv. Co.*, No. 21-11567, 2022 WL 1499693, at *3 (11th Cir. May 12, 2022) (quoting *Porter*, 273 So. 3d at 1028, for the same proposition). Thus, to determine whether a browsewrap agreement is enforceable, "the Court

considers 'the clarity and conspicuousness of the terms' to determine whether a reasonably prudent user would be put on notice of the agreement." *Derriman*, 710 F. Supp. 3d at 1140 (quoting *Fridman*, 554 F. Supp. 3d at 1260 (citation and internal alterations omitted)). "In the context of web-based contracts, clarity and conspicuousness are a function of the design and content of the relevant interface." *Id.* (citation omitted).

Florida courts routinely uphold browsewrap agreements that are far less clear and conspicuous than Walmart's. For example, in *Derriman*, like here, the court considered whether the plaintiff agreed to an arbitration agreement included in the seller's terms of use. The terms could be accessed at the link to the phrase "terms and privacy" on the following webpage:



*Id.* at 1139. The plaintiff argued that "he was not provided notice of the messaging agreement sufficient to constitute a meeting of the minds and an enforceable contract" because the text was printed in "considerably smaller font than the surrounding website elements, is not in capital letters, is not in a different font color so as to indicate the presence of a hyperlink, and makes no mention of the arbitration clause contained within the Messaging Agreement." *Id.* at 1140. The *Derriman* plaintiff also claimed that the placement and style of Defendant's form were

"intentionally" designed to distract a reasonable consumer from being placed on notice of the terms of the agreement. *Id.*

The court in *Derriman* rejected these arguments. It observed that the words "'Terms' and 'Privacy' were underlined, indicating that they were hyperlinks." *Id.* "While it is true that the hyper-linked text pertaining to the Messaging Terms could have been bolder and larger, the text was prominently placed on top of the (contrasting) dark blue 'GET 15% OFF' button" and it "was placed directly above the sign-up button and set off from the text below it in a box of its own." *Id.* The Court held that this placement was "conspicuous enough to give Plaintiff notice." *Id.*

Similarly, this Court recently upheld the browsewrap agreement shown here:



*See Kravets v. Anthropologie, Inc.*, No. 22-cv-60443-BLOOM/Valle, 2022 WL 1978712, at *4 (S.D. Fla. June 6, 2022). This Court held that the plaintiff was bound by the "Terms"—which included an arbitration agreement—referenced in the above browsewrap agreement because, *inter alia*, they were "located directly above the 'GET FREE SHIPPING NOW' button and contain bold and underlined links to additional terms and conditions." *Id.* "Such a placement is

sufficient to provide inquiry notice." *Id.*; *see also Arencibia*, 2022 WL 1499693, at *3 (enforcing browsewrap agreement because "[e]ven if [the plaintiff] did not read the terms of the Policy before purchasing it, we agree with the district court that [the plaintiff] was on inquiry notice that '[t]erms, conditions, and exclusions apply' because the hyperlink in the offer box was conspicuous and plainly disclosed.").

The link to Walmart's TOU Agreement is far more conspicuous than the ones upheld in *Derriman*, *Kravets*, and *Arencibia*:



Garikepati Decl. ¶ 8. As was the case in *Kravets*, customers are confronted with a notice "located directly above" the place order button: "[b]y placing this order you agree to our Privacy Policy and Terms of Use." Garikepati Decl. ¶ 8. As was the case in *Derriman*, the "Terms of Use" is underlined, "indicating that [is a] hyperlink[]," and it is "prominently placed on top" of the button to place the order. 710 F. Supp. 3d at 1140. In fact, Walmart's terms are more clear and conspicuous than those at issue in *Kravets* and *Derriman* because they are **not** buried in a paragraph of text. There are no other terms adjoining the notice (such as the age of the user or payment details) that a reasonably prudent user could possibly mistake as being the "terms" he was agreeing to. Lastly, instead of merely stating "Terms, conditions and exclusions apply," as the Eleventh Circuit found was sufficient in *Arencibia*, Walmart's customers are specifically informed that "[b]y placing this order, you agree to our Privacy Policy and Terms of Use."

As pointed out by another district court considering the exact same Walmart Checkout Process, the hyperlinked terms were easily accessible to Rogolino such that "[w]ith just the

single click of a mouse before placing his order, Plaintiff [Rogolino] would have been able to access the Terms of Use, as well as the Arbitration Clause," *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1275–76 (M.D. Tenn. 2020). A reasonable consumer would understand that by clicking the button to place an order, he would be agreeing to the <u>Terms of Use</u> because the webpage clearly and conspicuously said exactly that.

As a result, it is no surprise that courts unanimously have enforced Walmart's Terms of Use—including the arbitration agreement—under the same circumstances presented here. *See, e.g.*, *Adelstein v. Walmart Inc.*, No. 1:23-cv-00067, 2024 WL 1347043, at *4 (N.D. Ohio Mar. 30, 2024) ("Walmart's TOU was directly accessible beneath the 'Place Order' button, underlined indicating a hyperlink, with clear visual presentation. So, the Court finds that the TOU was reasonably communicated to Plaintiff via his January 2022 purchase. There is therefore a valid and enforceable arbitration agreement between the parties."); *Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890, 898 (C.D. Cal. 2020) ("Plaintiff assented to Walmart's Terms of Use and Arbitration Provision"); *Anderson* 490 F. Supp. 3d at 1277 ("the Court GRANTS Defendant Walmart's Motion to Compel Arbitration and to Dismiss the action as to Plaintiff Anderson"); *id.* at 1275–76 ("Regardless of whether the agreement constitutes clickwrap or hybrid clickwrap/browsewrap, the agreement is of the type that has regularly been upheld by courts." (citations omitted)).

The Court should reach the same conclusion here: Rogolino (and each putative class member) is bound by the arbitration agreement they entered when they clicked the "Place Order" button to purchase goods from Walmart online.

**B.     The Enforceable Arbitration Agreement Covers This Dispute**

In the next step of the analysis, the Court considers whether the arbitration agreement covers the dispute at issue. *Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D.

Fla. 2004). The Eleventh Circuit has instructed: "Any doubts concerning the scope of arbitrable issues—that is, doubts over whether an issue falls within the ambit of what the parties agreed to arbitrate—should be resolved in favor of arbitration." *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018) (cleaned up) (internal quotation marks and citation omitted). As a result, "when faced with silence or ambiguity about the question whether a particular merits-related dispute is arbitrable, we presume that an arbitrator will decide the merits-related dispute." *Id.* at 930 (cleaned up) (internal quotation marks and citation omitted).

Here the arbitration agreement broadly covers "ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART." Ex. 1 § 20. And it specifically includes claims "BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY." *Id.* Other courts considering this language have concluded that it "extends broadly" and construed it by its plain text to "ALL DISPUTES." *See, e.g.*, *Maynez*, 479 F. Supp. 3d at 898. And the Eleventh Circuit has made clear that there "is nothing unusual about an arbitration clause . . . that requires arbitration of all disputes between the parties to the agreement." *Bd. of Trs. of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Glob. Mkts., Inc.*, 622 F.3d 1335, 1343 (11th Cir. 2010).

Rogolino's claims unquestionably arise out of, or relate to, his relationship with Walmart. The crux of Rogolino's complaint is that Walmart should not have collected sales tax on the fee he paid to deliver the product he purchased online from Walmart. Compl. ¶¶ 17–21. Rogolino's Complaint—which alleges negligence based on alleged non-compliance with Rule 12A-1.045 of the Florida Administrative Code—sounds in "tort" and "statute," and it arises from the seller-

buyer "relationship between [him] and Walmart." Accordingly, Rogolino's claims fall within the parameters of the arbitration agreement.

### C.   The Court Should Compel Arbitration On An Individual Basis And Stay This Case

Because Rogolino's claims are subject to contractual arbitration, the Court should compel arbitration. *See John B. Goodman Ltd. P'ship, Inc.*, 321 F.3d at 1095 ("Under the FAA . . . a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute."); *JPay*, 904 F.3d at 929 ("Where the parties have agreed to arbitrate their dispute, the job of the courts—indeed, the obligation—is to enforce that agreement."). Moreover, Rogolino must arbitrate his claims on an individual, not class, basis. The TOU Agreement contains an express class action waiver:

- "YOU AND WALMART AGREE THAT ANY ARBITRATION REQUIRED BY THE ARBITRATION AGREEMENT WILL TAKE PLACE ON AN INDIVIDUAL BASIS"

- "You and Walmart each agree to waive the right to have any dispute or claim subject to the Arbitration Agreement brought, heard administered, resolved, or arbitrated as a class arbitration, class action, collective action or Mass Action to the maximum extent permitted by law."

Ex. 1, § 20(B). The Supreme Court has been clear that "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). "Not only did Congress require courts to respect and enforce agreements to arbitrate; it also specifically directed them to respect and enforce the parties' chosen arbitration procedures." *Lewis*, 584 U.S. at 506. As is relevant here, Congress has "instructed federal courts to enforce arbitration agreements according to their terms—**including terms providing for individualized proceedings**." *Id*. at 502 (emphasis added); *see also DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 49–51 (2015) (holding that an arbitration agreement waiving class arbitration is

valid and enforceable). Accordingly, this Court should compel individual arbitration of Rogolino's claims.

Finally, this Court should stay this entire case pending the arbitraton's outcome. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."); *Caley*, 428 F.3d at 1368 (internal quotation marks and citation omitted) ("FAA's enforcement sections require a court to stay a proceeding where the issue in the proceeding is referable to arbitration"); *see also* 9 U.S.C. §§ 3, 4. Absent such a stay, Walmart will be prejudiced by being forced to litigate in this forum despite its agreement with Rogolino to arbitrate, and any continued litigation would improperly invade the province of the arbitrator while arbitration is pending.

## II.   If The Court Elects Not To Compel Arbitration, Count I Should Be Dismissed Due To The Failure To Exhaust Administrative Remedies

If the Court determines the pending dispute is not subject to arbitration, then Count I nevertheless should be dismissed because Rogolino (and the class members) failed to exhaust administrative remedies prior to filing this lawsuit.

Florida law provides an "exclusive procedure and remedy for refund claims," Fla. Stat. § 215.26(4) (2005), including in circumstances where a person allegedly paid "moneys [] into the State Treasury" where "no tax . . . is due," *id.* § 215.26(1). *See State Dep't of Highway Safety and Motor Vehicles v. Rendon*, 957 So. 2d 647, 653 (Fla. 3d DCA 2007) ("Florida has established a statutory procedure for obtaining a refund of a tax payment where no tax was due."). The statute requires, *inter alia*, "[a]pplication[s] for refunds" to be "filed with the Chief Financial Officer," who may delegate his or her authority to accept refund applications. Fla. Stat. § 215.26(2) (2005); *see also* Fla. Admin. Code R. 12-26.002(2) ("Under the provisions of section 215.26(2),

F.S., and rule 69I-44.020, F.A.C., the Comptroller has delegated to the Department of Revenue the authority to accept an application for refund of any tax, fee, surcharge, permit, license, or account due collected by the Department under the revenue laws of this state.").

Eleventh Circuit precedent makes clear that consumers such as Rogolino are required to pursue this administrative remedy **before** suing retailers to recoup allegedly improperly collected sales tax—as Rogolino does in Count I of his complaint. *See Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1049 (11th Cir. 2020). In *Fox*, the defendant hotel charged an automatic gratuity and calculated sales tax on the total check, including the gratuity. In Count III of a class action complaint, the plaintiff alleged that collecting sales tax on mandatory gratuities violated rule 12A-1.0115 of the Florida Administrative Code. *Id.* at 1044. However, because the plaintiff did not exhaust his administrative remedies before suing for a refund of the allegedly improper tax, the district court dismissed that count, and the Eleventh Circuit affirmed.

The Eleventh Circuit observed that the *Erie* doctrine "bound [it] to adhere to [the] decisions of" the Florida Supreme Court—as well as Florida's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise. *Id.* at 1049 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Notably, the court recognized that the Florida Supreme Court had held that Section 215.26 "'provides the mechanism' for obtaining a tax refund." *Id.* at 1049 (quoting *Sarnoff v. Fla. Dep't of Highway Safety and Motor Vehicles*, 825 So. 2d 351, 355 (Fla. 2002)).[1]

---

[1] Indeed, the Florida Supreme Court has held that compliance with section 215.26 will be excused only "when the claim is solely that the refund is required because the tax is unconstitutional," *Dept. of Revenue v. Nemeth*, 733 So. 2d 970, 974 (Fla. 1999) (footnote omitted). "If the refund is claimed on any other basis, there must be compliance with section 215.26 . . . ." *Id.* at 974 n.6. Rogolino does not allege any constitutional claims. He asserts only that a private actor failed to comply with a Florida tax regulation. Accordingly, his claim does not qualify for the sole exception to exhaustion identified in *Nemeth*.

The Court further explained that Section 215.26, requires "'an individual . . . to request a refund' through the statutorily-defined administrative process 'before proceeding to [Florida] circuit court.'" *Id.* at 1049 (quoting *Sarnoff*, 825 So. 2d at 355). "The taxpayer may bring suit if the taxpayer's administrative request for a refund is denied." *Id.* (quoting *Rendon*, 957 So. 2d at 653–54.). The Court further held that the "[e]xhaustion of administrative remedies applies to claims for refunds both from the state and from the dealer that collected the tax," and thus, the plaintiff "must comply with section 215.26 before suing for a tax refund." *Id.* at 1049–50 (citing *BJ's Wholesale Club, Inc. v. Bugliaro*, 273 So. 3d 1119, 1121 (Fla. 3d DCA 2019)).

The same statute applies here and compels the same result. Like *Fox*, this case involves a class action complaint in which one count seeks to recoup sales tax collected in alleged violation of Florida tax rules. Like *Fox*, there are no allegations that Rogolino (or any of the class members) complied with that process. Like the Eleventh Circuit in *Fox*, this Court should apply Florida's statutory exhaustion requirement prohibiting claims against a seller to recover sales tax that was allegedly improperly collected because Rogolino did not follow the mandatory administrative process. "Under Florida precedent, it [is] necessary for each individual class member to make an application for refund under section 215.26 within the statutory time limit." *Rendon*, 957 So. 2d at 654; *see also State ex rel. Devlin v. Dickinson*, 305 So. 2d 848, 850 (1st DCA 1975) ("only those who applied for this refund [pursuant to Fla. Stat. § 215.26] are entitled to be represented in the class action herein").

"Because Count I includes a request for a refund, [Rogolino] and any putative class members were required to exhaust their administrative remedies with the Department of Revenue pursuant to section 215.26 . . . ." *BJ's Wholesale*, 273 So. 3d at 1121. "Because [Rogolino] did

not follow that administrative process," *Fox*, 977 F.3d at 1051, Count I should be dismissed in the event the Court denies Walmart's motion to compel arbitration.

## CONCLUSION

For the foregoing reasons, Walmart respectfully requests that this Court order the parties to arbitrate their dispute on an individual basis. Alternatively, Count I should be dismissed because Rogolino failed to exhaust the required administrative process.

Date: November 11, 2024

Respectfully submitted,

/s/ *Bret R. Vallacher*
Bret R. Vallacher
FL Bar No. 1011122
MASSEY & GAIL LLP
1000 Maine Ave SW, Suite 450
Washington, D.C. 20024
(202) 780-0351 (telephone)
(312) 379-0467 (facsimile)
bvallacher@masseygail.com

Suyash Agrawal (Admitted Pro Hac Vice)
Paul Berks (Admitted Pro Hac Vice)
MASSEY & GAIL LLP
50 E. Washington Street, Suite 400
Chicago, Illinois 60602
(312) 283-1590 (telephone)
(312) 379-0467 (facsimile)
sagrawal@masseygail.com
pberks@masseygail.com

*Attorneys for Defendant Walmart, Inc.*