**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 2:24-cv-14308-AMC**

MARK ROGOLINO,
individually and
on behalf of all others similarly situated,   **CLASS REPRESENTATION**

    Plaintiff,   **JURY TRIAL DEMANDED**

v.

WALMART, INC.,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION TO COMPEL ARBITRATION AND TO DISMISS**

Plaintiff Mark Rogolino responds in opposition to Defendant Walmart, Inc.'s Motion to Compel Arbitration or, in the Alternative, Motion to Dismiss Count I ("Mot." or "Motion"), [DE 17], and states:

**INTRODUCTION**

Defendant seeks to compel arbitration of Plaintiff's class action claims pursuant to an on-line form that did not conspicuously disclose to Plaintiff that he was agreeing to an arbitration provision hidden within lengthy terms. The form at issue is depicted below:



Judge Huck recently denied a motion to compel arbitration based on the below similar online form on the basis that the hyperlink to the applicable terms was not in color or capitalized as a consumer would expect and, therefore, it failed to place the consumer on reasonable notice of the arbitration terms:

1



*Tejon v. Zeus Networks, LLC,* 725 F. Supp. 3d 1351, 1356 (S.D. Fla. 2024) (Huck, J.) ("First, it is generally recognized that hyperlinks are usually displayed in a blue font, as a means to stand out from the rest of the page….Merely underlining the hyperlinks, without more, does not provide sufficient contrast from the other gray font of identical size and capitalization on the webpage and black background.")

Judge Huck's holding is consistent with the Ninth Circuit's approach, which was also recently adopted by the Seventh Circuit in *Domer v. Menard, Inc.*, where the Seventh Circuit held that "[a] web designer must do more than 'simply underscore the hyperlinked text' to ensure that it is sufficiently 'set apart' from the surrounding text." 2024 U.S. App. LEXIS 22307, at *14 (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022); *cf. Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516 (9th Cir. 2023) ("[C]rucially, the 'Terms of Use' hyperlink is conspicuously distinguished from the surrounding text in bright blue font.")

As another court in this District put it, consumers are not required to "hover their mouse over otherwise plain-looking text or aimlessly click on words on a page in an effort to ferret out hyperlinks." *Valiente v. Nexgen Glob., LLC*, No. 22-cv-22480-ALTMAN/Reid, 2023 U.S. Dist. LEXIS 169829, at *26 (S.D. Fla. Sep. 22, 2023) (Altman, J.) (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th

849, 856-57 (9th Cir. 2022)). This is precisely what Defendant contends Plaintiff should have done. But if Defendant wanted to create an enforceable agreement, it was required to conspicuously design its website hyperlinks to place Plaintiff on notice. Defendant failed to do so, and no enforceable agreement was formed.

Defendant's request for dismissal for failure to exhaust administrative remedies should also be denied pursuant to the binding holding of *Oracle Am., Inc. v. Fla. Dep't of Rev.*, in which the First District Court of Appeals harmonized the application of Florida Statute section 215.26 and Rule 12A-1.014(4) of the Florida Administrative Code, and held that taxpayers like Plaintiff and the class members "***must secure a refund of the tax from the dealer and not from the Department of Revenue***." Nos. 1D2023-0987, 1D2023-1075, 1D2023-1077, 2024 Fla. App. LEXIS 9341, at *6 (1st DCA Dec. 4, 2024) (quoting Fla. Admin. Code R. 12A—1.014(4)) (emphasis added). In other words, there is no administrative remedy that Plaintiff and the class members were required to exhaust; they properly filed this suit to secure a refund from Defendant (the dealer), and Defendant is free to request a refund from the Department of Revenue after it makes Plaintiff and the class members whole. *See Oracle Am.,* 2024 Fla. App. LEXIS 9341, at *8 ("Oracle's tax refund requests were denied or dismissed for the same looming defect in its applications—the failure to first refund its customers. But Oracle asserts that it need not refund the taxes to its customers before seeking a refund from the Department. The texts of the governing statutes say otherwise.") Defendant's Motion should therefore be denied.

**ARGUMENT**

    **I.**    **DEFENDANT'S MOTION TO COMPEL ARBITRATION SHOULD BE DENIED**

        **A. Legal Standard**

"Despite courts' proclivity for enforcement, a party will not be required to arbitrate where it has not agreed to do so." *Fridman v. 1-800 Contacts, Inc.*, No. 21-cv-21700-BLOOM/Otazo-Reyes, 2021 U.S. Dist. LEXIS 152553, at *4-5 (S.D. Fla. Aug. 12, 2021) (citing *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010), *aff'd*, 433 F. App'x 842 (11th Cir. 2011) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960))). "Under federal law, arbitration is a matter of consent, not coercion." *Fridman*, 2021 U.S. Dist. LEXIS 152553, at *5 (quoting *World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008)).

"[T]he presumption of arbitrability 'does not apply to disputes concerning whether an agreement to arbitrate has been made.'" *Bell v. Royal Seas Cruises, Inc.*, No. 19-CV-60752-RUIZ/STRAUSS, 2020 U.S. Dist. LEXIS 85273, at *6 (S.D. Fla. May 13, 2020) (quoting *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115-16 (11th Cir. 2014))). The Supreme Court recently reiterated this rule and rejected the claim that arbitration is broadly favored over litigation:

> Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation….***The federal policy is about treating arbitration contracts like all others, not about fostering arbitration***.

*Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1710 (2022) (emphasis supplied).

### B. Defendant Failed to Provide Conspicuous Notice of its Arbitration Provision

As observed by one court in this District, Florida law treats on-line browsewrap and clickwrap agreements differently:

> "A 'clickwrap' agreement occurs when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions." [*MetroPCS Commc'ns, Inc. v. Porter,* 273 So. 3d 1025, 1028 (Fla. 3d DCA 2018)] (quoting [*Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. 4th DCA 2017)]). "A 'browsewrap' agreement occurs when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process. The purchaser can complete the transaction without visiting the page containing the terms and conditions." *Id*. (quoting *Vitacost*, 210 So. 3d at 762). Courts generally enforce clickwrap agreements. *Vitacost*, 210 So. 3d at 762. Browsewrap agreements, however, "have only been enforced when the purchaser has actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice." *MetroPCS,* 273 So. 3d at 1028 (quoting *Vitacost*, 210 So. 3d at 762).

*Bell v. Royal Seas Cruises, Inc*., No. 19-CV-60752-RUIZ/STRAUSS, 2020 U.S. Dist. LEXIS 85273, at *15 (S.D. Fla. May 13, 2020).

Defendant concedes that its on-line form is a browsewrap agreement. *See* Mot. at 7. Where, as is the case here,

> "there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen*, 763 F3d at 1177. "Whether a reasonably prudent user is put on inquiry notice turns on the clarity and conspicuousness of [the] terms." *Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1230 (S.D. Fla. 2020) (citations and quotations omitted). "***In the context of web-based contracts, clarity and conspicuousness are a function of the design and content of the relevant interface.***" *Id*. (citations and quotations omitted).

*Fridman v. 1-800 Contacts, Inc.*, No. 21-cv-21700-BLOOM/Otazo-Reyes, 2021 U.S. Dist. LEXIS 152553, at *13 (S.D. Fla. Aug. 12, 2021) (emphasis supplied).

In addition to Judge Huck's decision in *Tejon*, discussed above, Courts in this Circuit and others have applied these principles to deny motions to compel arbitration where the hyperlink containing the arbitration agreement was not in a traditional hyperlink color (i.e., blue) or capitalized, as is the case here. For example, in *Johnson v. Whaleco*, Inc., Judge Presnell held in part that the following online disclosures was not sufficiently conspicuous because it did not contain any of the visual cues traditionally used to denote the existence of a hyperlink:



2023 U.S. Dist. LEXIS 184104, at *7-8 (M.D. Fla. Oct. 13, 2023) (Presnell, J.) ("Most damning to Defendant's attempt to enforce the Agreement is its use of a very light grey font against a white background[.]") (citations omitted).

Similarly, in *Valiente*, Judge Altman denied a motion to compel based on a white font hyperlink in part because it was below the action button and not in a traditional hyperlink color:



2023 U.S. Dist. LEXIS 169829, at *26 (S.D. Fla. Sep. 22, 2023).

In reaching his conclusions, Judge Altman relied on the Ninth Circuit's opinion in *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022). At issue in *Berman* was a disclosure more conspicuous than the one here. That disclosure placed the hyperlink and mandatory arbitration language immediately above a "continue" action button and immediately below the select gender inquiry. Accordingly, someone entering information into the form would have been required to answer the gender question then look down at the terms and conditions hyperlink and mandatory arbitration language before pressing the "continue" button as shown below:



*Id.* at Appendix B.

Notwithstanding, the Ninth Circuit held that the terms were not reasonably conspicuous:

> Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print. Because "online providers have complete control over the design of their websites," *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 289 Cal. Rptr. 3d 1, 16 (Ct. App. 2021), "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers," *Nguyen*, 763 F.3d at 1179. The designer of the webpages at issue here did not take that obligation to heart.
>
> Second, while it is permissible to disclose terms and conditions through a hyperlink, the fact that a hyperlink is present must be readily apparent. Simply underscoring words or phrases, as in the webpages at issue here,

8

> will often be insufficient to alert a reasonably prudent user that a clickable link exists. *See Sellers*, 289 Cal. Rptr. 3d at 29. Because our inquiry notice standard demands conspicuousness tailored to the reasonably prudent Internet user, not to the expert user, the design of the hyperlinks must put such a user on notice of their existence. *Nguyen*, 763 F.3d at 1177, 1179.
>
> A web designer must do more than simply underscore the hyperlinked text in order to ensure that it is sufficiently "set apart" from the surrounding text. *Sellers*, 289 Cal. Rptr. 3d at 29.

*Id.* at 857.

Here, as in *Berman*, Defendant's online form fails to provide conspicuous notice of its arbitration provision and instead consists of a hyperlink to the Terms of Service without any color or capital letters indiciating that a hyperlink exists. As held by the Ninth Circuit – with which the Seventh Circuit recently concurred in *Domer* – simply underlining the Terms of Service hyperlink is insufficient to ensure that website visitors are notified. The First and Second Circuits also agree, noting that "[w]hile not all hyperlinks need to have the same characteristics, they are 'commonly blue and underlined.'" *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 63 (1st Cir. 2018) (quoting *CR Assocs. L.P. v. Sparefoot, Inc.*, No. 17-10551-LTS, 2018 U.S. Dist. LEXIS 26438, 2018 WL 988056, at *4 n.4 (D. Mass. Feb. 20, 2018); citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) ("[T]he hyperlinks are in blue and underlined."); *Adelson v. Harris*, 774 F.3d 803, 808 (2d Cir. 2014) ("[T]he hyperlinks were not hidden but visible in the customary manner, that is, by being embedded in blue, underlined text.")).

Consistent with the above cases, other district courts have found notice inquiry only where hyperlinks were presented to the consumer in a traditional hyperlink color. *See, e.g., Bold Ltd. v. Rocket Resume, Inc.*, No. 22-cv-01045, 2023 U.S. Dist. LEXIS 108212, at *10 (N.D. Cal. June 22, 2023) ("The words 'Terms of Use' and 'Privacy Policy' are in blue font and underlined"); *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1269 (M.D. Tenn. 2020) (hyperlinks noted through contrasting color and underlined); *Massel v. Successfulmatch.Com*, No. 23-cv-02389-PCP, 2024 U.S. Dist. LEXIS 33553, at

9

*14-15 (N.D. Cal. Feb. 27, 2024) ("Because Millionaire Match's links were underlined but did not appear in a contrasting color, the Court must conclude, under *Berman*, that they were not reasonably conspicuous enough to put Mr. Massel on notice of the terms and that Mr. Massel therefore cannot be said to have assented to them….These distinctions may seem picayune, but website operators like Millionaire Match have ultimate control over their design decisions. Nothing requires them to present terms as subtle hyperlinks to separate pages instead of, say, requiring users to scroll through the actual terms before signing up."); *Campos v. Tubi, Inc.*, No. 23-cv-3843, 2024 U.S. Dist. LEXIS 22247, at *4, (N.D. Ill. Feb. 8, 2024) (holding that the disclosure, while underscored, was insufficient to place a consumer on inquiry notice because the "gray font [] contrasts poorly with the background").

Consistent with this line of cases, no reasonably prudent consumer would have been placed on inquiry notice of Defendant's arbitration provision. As depicted above, Defendant's Terms of Use hyperlink contains no visual cues (i.e., color or capital letters) to alert the consumer to the existence of a clickable link. Defendant will likely argue that the proximity of the hyperlink to the "Place order" button was sufficient to place Plaintiff on notice, but "even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." *Berman*, 30 F.4th at 858; *see also Brooks*, 2022 U.S. Dist. LEXIS 103732, at *21 ("small hyperlinks to website terms of use that are close in proximity to relevant buttons that consumers must click to continue using a website…are not reasonably conspicuous so as to put a reasonably prudent website user on notice.") (citing *Berman*, 30 F.4th at 856-57, 859-61; *Sellers*, 73 Cal. App. 5th at 480-81 (finding the phrase "By clicking 'Start my trial' you indicate that you agree to the Terms of Service" insufficiently conspicuous even when it was near a large orange button titled 'Start my trial,' because the text was not in all capital letters, lacked contrasting font color, and was smaller than all other text on the webpage); *Nguyen v. Barnes & Noble Inc.*, 763

F.3d 1171, 1177-79 (9th Cir. 2014) (concluding that "the placement of the 'Terms of Use' hyperlink in the bottom left-hand corner of every page on the Barnes & Noble website" and "either directly below the relevant button a user must click on to proceed in the checkout process or just a few inches away" was "not enough to give rise to constructive notice")).

The two Florida browsewrap cases on which Defendant relies are distinguishable and inapplicable. First, in *Derriman v. Mizzen & Main LLC*, the court found the plaintiff's argument that he did not have notice of the hyperlink to be unpersuasive given that "Plaintiff indicated his assent to the agreement twice—once by pressing a button, and again by sending a pre-populated text message." 710 F. Supp. 3d 1129, 1138 (M.D. Fla. 2023). Similarly, the sign-in process in *Kravets v. Anthropologie, Inc.*, required a " 'double-opt in' process that required Plaintiff's affirmative response in the form of a text, that Plaintiff understood the legal significance of her actions and agreed to the Text Terms and the Arbitration Provision within the Text Terms." No. 22-cv-60443, 2022 U.S. Dist. LEXIS 100202, at *15 (S.D. Fla. June 3, 2022). Here, unlike *Derriman* and *Kravets*, Defendant's website did not require Plaintiff to assent by clicking and then sending a second pre-populated message. Second, *Arencibia v. AGA Serv. Co.*, involved a hybrid agreement that required the plaintiff to click a box and a hyperlink that was denoted in the traditional blue hyperlink font. *See* 533 F. Supp. 3d 1180, 1190 (S.D. Fla. 2021). Accordingly, that case is of little value to the inquiry notice/browsewrap analysis before the court.

In sum, Defendant's "failure to clearly denote the hyperlinks here fails [the] conspicuousness test." *Berman*, 30 F.4th at 857. Because "online providers have complete control over the design of their websites," *id.* (quoting *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 289 Cal. Rptr. 3d 1, 16 (Ct. App. 2021)), "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers," *id.* (quoting *Nguyen*, 763 F.3d at 1179).

11

Defendant "here did not take that obligation to heart." *Berman*, 30 F.4th at 857. All Defendant needed to do was to add color and/or capitalized letters to denote the existence of a clickable hyperlink to its Terms of Use. It instead opted for a design that hid the hyperlink from Plaintiff so that Plaintiff was not on notice of the purported agreement. Accordingly, a binding contract was never formed and the demand for arbitration should be denied.

II. **DEFENDANT'S MOTION TO DISMISS COUNT I SHOULD BE DENIED**

Defendant also contends that Count I of the First Amended Complaint must be dismissed because Plaintiff and the class members failed to exhaust their administrative remedies under Florida Statute section 215.26 by requesting a refund directly from Department of Revenue before filing this lawsuit. Defendant is mistaken.

"Both Florida law and the Florida Administrative Code provide instructions for seeking a refund from the state treasury." *Oracle Am., Inc. v. Fla. Dep't of Rev.*, Nos. 1D2023-0987, 1D2023-1075, 1D2023-1077, 2024 Fla. App. LEXIS 9341, at *6 (1st DCA Dec. 4, 2024). The applicable Florida Administrative Code "requires that '[a] taxpayer who has overpaid tax to a dealer, or who had paid tax to a dealer when no tax is due, must secure a refund of the tax from the dealer and not from the Department of Revenue.' Fla. Admin. Code R. 12A—1.014(4). The Code then instructs dealers to file an application to seek a refund from the Department of Revenue." *Id*. (citing Fla. Admin. Code R. 12A-1.014(5)). In other words, "*a dealer is the proper party to seek a refund from the Department*[,]" and the "*person who paid the tax is the proper person or entity to be refunded*." *Id*. at *7, 9 (emphasis added)

Accordingly, the administrative process Defendant has self-servingly manufactured does not exist. Plaintiff and the class members are prohibited from seeking a refund directly from the Department of Revenue and Florida Statute section 215.26 does not apply under these facts as the

court in *Schojan v. Papa John's Int'l, Inc.*, correctly held. *See* 34 F. Supp. 3d 1206 (M.D. Fla. 2014) ("according to Florida Administrative Code Rule 12A-1.014(4), Plaintiffs must seek a refund directly from the dealer, not the Florida Department of Revenue….Therefore, the Court agrees that the Plaintiffs have no administrative remedy and the Motion to Dismiss is denied in this regard.") As the only precedent directly on point (i.e., addressing the application of both the administrative code and the statute), this Court is bound by *Oracle Am.*, "absent some persuasive indication that the state's highest court would decide the issue otherwise." *Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1049 (11th Cir. 2020) (quoting *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1020 (11th Cir. 2014)). Given the reasoned analysis of *Oracle Am.,* Defendant cannot in good faith argue that the Florida Supreme Court would rule differently.

Defendant's criticism of *Schojan* – that the court failed to "harmonize Rule 12A-1.014(4), which is a regulation, with Section 215.26, which is a statute[]" – is incorrect and has since been addressed by the First DCA in *Oracle Am.* Moreover, the plain language of Rule 12A-1.014(4) does not require Plaintiff and the class members to secure an assignment of rights from Defendant, and Defendant cannot create an administrative procedure by citing to instructions which merely state that a "taxpayer **may** provide the Department an Assignment of Rights…" *See* Mot. at 19 (quoting TECH. ASSISTANCE ADVISEMENT 15A-015, Fla. Dept. Rev., 2015 WL 10575832, at *5 (Fla. Oct. 26, 2015) (emphasis added)).

## CONCLUSION

Defendant has not demonstrated the existence of an enforceable arbitration agreement, and this case should therefore be permitted to remain in court. Defendant also has failed to demonstrate compliance with any applicable administrative remedy.

**WHEREFORE**, Plaintiff respectfully requests an Order denying Defendant's Motion and for such other relief deemed appropriate.

DATED: December 17, 2024

                                                  Respectfully submitted,

                                                  **HIRALDO P.A.**

                                                  */s/ Manuel S. Hiraldo*
                                                  Manuel S. Hiraldo, Esq.
                                                  Florida Bar No. 030380
                                                  401 E. Las Olas Boulevard
                                                  Suite 1400
                                                  Ft. Lauderdale, Florida 33301
                                                  Email: mhiraldo@hiraldolaw.com
                                                  Telephone: 954.400.4713
                                                  *Counsel for Plaintiff*