UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

| | |
|---|---|
| MARK ROGOLINO, individually and on behalf of all other similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>WALMART, INC.,<br><br>*Defendant*. | **CASE NO. 2:24-cv-14308-AMC** |

**WALMART, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, MOTION TO DISMISS COUNT I**

Bret R. Vallacher
FL Bar No. 1011122
MASSEY & GAIL LLP
1000 Maine Ave SW, Suite 450
Washington, D.C. 20024
(202) 780-0351 (telephone)
(312) 379-0467 (facsimile)
bvallacher@masseygail.com

Suyash Agrawal (Admitted Pro Hac Vice)
Paul Berks (Admitted Pro Hac Vice)
MASSEY & GAIL LLP
50 E. Washington Street, Suite 400
Chicago, Illinois 60602
(312) 283-1590 (telephone)
(312) 379-0467 (facsimile)
sagrawal@masseygail.com
pberks@masseygail.com

*Attorneys for Defendant Walmart, Inc.*

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

I.  PLAINTIFF AGREED TO WALMART'S TERMS OF USE, INCLUDING THE ARBITRATION
    PROVISION, WHEN HE PLACED HIS ORDER. ...................................................................... 2

    A.  The Hyperlink To The Terms Of Use Was Conspicuous. ...................................... 3

    B.  Hyperlinks Do Not Have To Be Blue To Be Conspicuous. ................................... 6

II. IN THE ALTERNATIVE, COUNT I SHOULD BE DISMISSED FOR FAILURE TO EXHAUST
    ADMINISTRATIVE REMEDIES. ............................................................................................ 9

CONCLUSION ...................................................................................................................... 10

**INTRODUCTION**

In its Motion to Compel Or Dismiss In the Alternative ("Mot.") (ECF No. 17-1), Walmart explained that Plaintiff and Walmart agreed to arbitrate on an individual basis "ALL DISPUTES ARISING OUT OF . . . ANY ASPECT OF THE RELATIONSHIP BETWEEN [HIM] AND WALMART." Mot. at 1 (quoting Terms of Use § 20(B)). Walmart further explained that Plaintiff explicitly agreed to these terms by placing his order because the hyperlink to the Terms of Use is "conspicuous enough to put a reasonably prudent person on inquiry notice" that the Terms of Use apply upon placing an order. Mot. at 7 (citing *Fridman v. 1-800 Contacts, Inc.*, 554 F. Supp. 3d 1252, 1259 (S.D. Fla. 2021)). Walmart explained that under these circumstances, the Federal Arbitration Act requires the Court to compel arbitration and stay this case.

In his opposition brief ("Opp.") (ECF No. 18), Plaintiff does not dispute that the Terms of Use would require individual arbitration to resolve his claims, but instead Plaintiff makes a Hail-Mary argument that the Terms of Use do not apply <u>at all</u> simply because they are not in blue font. This not only defies common sense, but, as explained below, it is not the law. In fact, it is not even supported by the authorities on which Plaintiff relies. The Court should reject Plaintiff's invitation to conjure a new bright line rule making blue font the *sine qua non* for enforceability.

In its Motion, Walmart also explained that, to the extent this Court does not compel arbitration, Count I should be dismissed because Plaintiff (and the class) failed to exhaust their administrative remedies before pursuing their claims for tax refunds. Walmart's position is based on the plain language of Florida's sales tax statute (FLA. STAT. § 215.26) and on binding precedent from the Eleventh Circuit (*Fox v. Ritz-Carlton Hotel Co. L.L.C.*, 977 F.3d 1039, 1049 (11th Cir. 2020)). *See* Mot. at 14–16. In response, Plaintiff simply ignores the 11th Circuit's decision in *Fox* and attempts to side-step the statute by relying on seemingly incongruous language in a regulation (Rule 12A-1.014). Plaintiff attempts to justify this maneuver by pointing to a recent decision from

1

First District Court of Appeal that explicitly contravenes his position. To the extent this case remains before this Court, the Court should adhere to the reasoning in *Oracle* and follow the 11th Circuit's *Fox* decision by dismissing Count I for failure to exhaust.

**I.    PLAINTIFF AGREED TO WALMART'S TERMS OF USE, INCLUDING THE ARBITRATION PROVISION, WHEN HE PLACED HIS ORDER.**

Plaintiff acknowledges that under Florida law, he must arbitrate his claims against Walmart if "the hyperlink to the terms and conditions" that included the arbitration provision was "conspicuous enough to put a reasonably prudent person on inquiry notice." Opp. at 5 (citations omitted). He also recognizes that "clarity and conspicuousness are a function of the design and content of the relevant interface." *Id.* Courts applying this standard have considered a variety of factors to determine whether a consumer had fair notice of the agreement, including the location, size, design, language, and the text surrounding the hyperlinked agreement. *See*, *e.g.*, *Domer v. Menard, Inc.*, 116 F. 4th 686, 695 (7th Cir. 2024) (identifying five-factor test to determine whether hyperlinked agreement was sufficiently conspicuous); *Kravets v. Anthropologie, Inc.*, No. 22-cv-60443, 2022 WL 1978712, at *5 (S.D. Fla. June 6, 2022) (finding link to agreement conspicuous by examining hyperlinked text's font size, color, location, and surrounding text).

Although Plaintiff pays lip service to the correct legal standard, his argument ignores it in favor of a proposed bright-line rule that a hypertext-linked agreement is not enforceable unless the link's font is blue. *See, e.g.*, Opp. at 9 (arguing that hyperlinks must be blue in color and underlined); *id.* at 12 ("All Defendant needed to do was to add color and/or capitalized letters to denote the existence of a clickable hyperlink to its Terms of Use."). Notably, the hyperlink to <u>Terms of Use</u> was both underlined and capitalized—so the only way in which Walmart's hyperlink falls short of Plaintiff's purported standard is the lack of blue font.

2

There is no support for Plaintiff's color-dispositive approach in any of the cases he cites or elsewhere. To the contrary, Plaintiff was on notice of the Terms of Use, including the arbitration provision, because Walmart directly and clearly advised him that "[b]y placing this order, you agree to our Privacy Policy and Terms of Use" followed immediately, without intervening text, by a "Place Order" button. Because the hyperlink was underlined, capitalized, and included in a direct unambiguous warning that he was entering an agreement by placing his order, Plaintiff was on inquiry notice and is bound by the Terms of Use.

A.   **The Hyperlink To The Terms Of Use Was Conspicuous.**

Three other federal courts have faced the exact question presented here regarding Walmart's Terms of Use in the same procedural posture. These courts have unanimously concluded that purchasers were on inquiry notice of Walmart's Terms of Use, so the terms, including the arbitration provision, were enforceable. *See Adelstein v. Walmart Inc.*, 728 F. Supp. 3d 762 (N.D. Ohio 2024); *Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890 (C.D. Cal. 2020); *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265 (M.D. Tenn. 2020). As explained in Walmart's Motion, these courts attached particular significance to the clear, direct statement, set off from other text, in the same box as, and directly above, the "Place Order" button.[1]



---

[1] As the court in *Anderson* explained, "[t]he Terms of Use were not hidden from the consumer . . . . The hyperlink was prominently displayed directly above the 'Place Order' button which was required to complete a purchase." *Anderson*, 490 F. Supp. 3d at 1275; *see also Maynez*, 479 F. Supp. 3d at 897 ("[T]he conspicuousness and placement of the 'Terms of Use' hyperlink on the Walmart app would have provided a reasonably prudent user with inquiry notice of the Terms of Use agreement." (internal quotations and citations omitted)); *Adelstein*, 728 F. Supp. 3d at 768 ("Walmart's TOU was directly accessible [above] the "Place Order" button, underlined indicating a hyperlink, with clear visual presentation. So, the Court finds that the TOU was reasonably communicated to Plaintiff . . .").

Thus, the courts that have considered the issue presented here have unanimously concluded that the link to Walmart's terms was clear and conspicuous. Courts in this circuit and elsewhere have adopted the same analysis in analogous circumstances. Even the principal case on which Plaintiff relies, *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) (cited in Opp. at 2, 7, 8, 9, 10, 11, 12), reinforces this unanimous conclusion. In *Berman*, the defendant argued the plaintiff agreed to the terms of use by clicking a button marked "continue." *Id.* at 857. The court rejected the argument because "merely clicking on a button on a webpage, viewed in the abstract, does not signify a user's agreement." *Id.* The court further explained that the terms were in "font so small that it is barely legible to the naked eye" and surrounded by text in larger font, which "naturally directs the user's attention everywhere else." *Id.* The court admonished that important provisions should be "prominently displayed, not buried in fine print." *Id.*

Here, Walmart's Terms of Use are not small (much less to the point of being "barely legible to the naked eye") nor are they "buried in fine print." But rather they are "prominently displayed" by themselves and, unlike the notice *Berman*, accepting them is an explicit condition for placing an order. In fact, the *Berman* court posed a hypothetical scenario very similar to the case at bar that it held would pass muster. The *Berman* court stated that if "the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of the agreement," then "a user's click of a button can be construed as an unambiguous manifestation of assent." *Id.* "The presence of an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound is critical to the enforceability of any browsewrap-type agreement." *Id.* at 857–58. In fact, the court in *Berman* explained that defendant "could easily have . . . remedied" the defect precluding enforcement "by including language such as, 'By clicking the Continue button, you

agree to the Terms & Conditions.'" *Id.* at 858. That is **<u>exactly</u>** what Walmart did. Thus, *Berman* supports enforcement of Walmart's Terms of Use.

As explained in Walmart's Motion, courts in this Circuit also agree that placing clear instructions with legible hyperlinks to binding terms directly above the button that constitutes acceptance makes it "highly likely that the user would see the statement" and thus "such a placement is sufficient to provide inquiry notice." *Kravets*, 2022 WL 1978712 at *4; *see also Derriman v. Mizzen & Main LLC*, 710 F. Supp. 3d 1129, 1140 (M.D. Fla. 2023) ("[T]he 'Terms' and 'Privacy' links are underlined, indicating that they are hyperlinks . . . . [The hyperlinks were] placed directly above the sign-up button and set off from the text below it in a box of its own. This placement is conspicuous enough to give Plaintiff notice."). Plaintiff asserts that *Kravetz* and *Derriman* turned not on the conspicuousness of the hyperlinked agreement but on the post-purchase text confirmation. Opp. at 11. Plaintiff is incorrect.

Plaintiff misleadingly implies that the Court enforced the terms in *Derriman* because "Plaintiff indicated his assent to the agreement twice—once by pressing a button, and again by sending a pre-populated text message." *Id*. (citing *Derriman*, 710 F. Supp. 3d at 1138). However, Plaintiff omits that the sentence from which he quotes begins with a "moreover" and that it is preceded by the actual holding: "Given the specific placement, size, and conspicuousness of the link to the browsewrap agreement, and Plaintiff's affirmative actions indicating assent to it, Plaintiff was put on inquiry notice of the Messaging Agreement and its associated arbitration clause." *Derriman*, 710 F. Supp. 3d at 1138. In any case, by acknowledging that "Plaintiff indicated his assent to the agreement twice," the quoted sentence itself necessarily means that the browsewrap alone constituted an assent to the agreement. *See also id.* at 1141 (explaining that the check-out process provided "inquiry notice of the agreement," which Plaintiff agreed to by

5

"click[ing] the button," which was "sufficient to establish an agreement"). That the *Derriman* plaintiffs *also* received confirmatory texts was merely "further evidence" of Plaintiff's assent. *Id.* The "double opt-in" language quoted from *Kravets* is also a red herring. The Court specifically held that the "Text Terms . . . located directly above the 'GET FREE SHIPPING NOW' button" were "conspicuous enough" because "[s]uch a placement is **sufficient** to provide inquiry notice." *Kravets*, 2022 WL 1978712, at *4 (emphasis added).

Because the hyperlink to Walmart's Terms of Use (i) was not buried in text, but prominently and legibly disclosed with underlined hyperlinks, (ii) was displayed directly above the "Place Order" button, and (iii) unambiguously advised purchasers that placing an order constituted an agreement to its terms, Plaintiff was on inquiry notice of the Terms of Use and they are enforceable.

**B.      Hyperlinks Do Not Have To Be Blue To Be Conspicuous.**

Plaintiff's argument that Walmart's Terms of Use were insufficiently conspicuous comes down to his assertion that hyperlinked terms of use are enforceable only if the hyperlink's font is blue. At different times, Plaintiff asserts that hyperlinked terms must be "blue or capitalized," Opp. at 6, or "blue and underlined," *id.* at 9. He concludes that Walmart may not enforce its Terms of Use because it did not "add color and/or capitalized letters to denote the existence of a clickable hyperlink to its Terms of Use." *Id.* at 12. Of course, Walmart *did* capitalize and underline the hyperlink on its website ("Privacy Policy" and "Terms of Use"). The fact that the hyperlinks were not blue is not the shibboleth that Plaintiff insists it is. In fact, according to Plaintiff's own authority, the conspicuousness of a hyperlink "does not turn on where the hyperlinked text falls on the color wheel." *Domer v. Menard, Inc.*, 116 F. 4th 686, 697 (7th Cir. 2024). Rather, the location, size, surrounding text, and overall design rendered Walmart's Terms of Use conspicuous. None of the cases on which Plaintiff relies support the bright line rule it asks this Court to adopt.

6

*Berman* is Plaintiff's principal case. But as explained above, the court explained that defendant "could easily have . . . remedied" the defect in *Berman* "by including language such as, 'By clicking the Continue button, you agree to the Terms and Conditions.'" *Id.* at 858. Because that is precisely what Walmart did, *Berman* supports arbitration here. But, just as importantly, the *Berman* court also explained that the hyperlinked terms in that case were insufficiently conspicuous because, *inter alia*, they were "in a font so small that it is barely legible to the naked eye" and "buried in fine print." *Id.* at 856–57. Walmart's notice of the Terms of Use is not afflicted by either defect here. And while the court in *Berman* observed that hyperlinks must be "sufficiently set apart from the surrounding text" so that they are recognizable as hyperlinks, *id.* at 857, Walmart has met that standard as well: the "Privacy Policy" and "Terms of Use" are set apart from any surrounding text in that they stand alone, they employ capital letters and underlining, and the content of the sentence in which they are found clearly advises the consumer that he or she is agreeing to the Privacy Policy and Terms of Use by placing an order.

The Seventh Circuit's decision in *Domer*, 116 F. 4th 686, which Plaintiff also cites (Opp. at 2), does not assist him. In fact, the court in *Domer* found that the consumer was put on notice of a hyperlink to a contract by the full sentence in which the link was located: "**Please note** . . . [b]y submitting your order you accept our Terms of Order" followed by a hyperlink to "Terms of Order Information." *Id*. at 697. This "prompt advise[d] users that by completing a purchase they are agreeing to the Terms of Order, which included the arbitration agreement." *Id.* Walmart similarly advised Plaintiff that by placing his order, he agreed to the Terms of Use, which included the arbitration provision. And the *Domer* court explicitly held: "It does not matter that the text was green rather than the typical blue" because "[r]easonable notice does not turn on where the

7

hyperlinked text falls on the color wheel." *Id*. (cleaned up) (internal citations and quotation marks omitted).

Plaintiff's reliance on *Tejon v. Zeus Networks, LLC*, 725 F. Supp. 3d 1351 (S.D. Fl. 2024) also is unavailing. Plaintiff characterizes *Tejon* as turning on the hyperlink's font color. Opp. at 1–2. But a cursory review of the order dispenses with that reductive interpretation. In fact, the court's decision more hinged on the "placement of the hyperlinks" which were below the action buttons and followed by language "regarding specific payment details and the age of the user." *Tejon*, 725 F. Supp. 3d at 1356. The Court held that this placement "would lead a reasonably prudent person to think that this very webpage contains the terms and conditions of the subscription, not a separate webpage." *Id.* Unlike in *Tejon*, there are no other terms adjoining Walmart's notice (such as the age of the user or payment details) that a reasonably prudent user could possibly mistake as being the "terms" he was agreeing to. In fact, Walmart avoided this confusion by putting the hyperlinks together with the "Place Order" button set off from all other text except the operative sentence: "By placing this order, you agree to our Privacy Policy and Terms of Use."

Plaintiff's reliance on *Valiente v. NexGen Global, LLC*, No. 22-cv-22480-ALTMAN-Reid, 2023 WL 6213583 (S.D. Fla. Sept. 22, 2023) similarly fails. Opp. at 6–7. That case did not turn on hyperlink color, but rather that court held that the terms of use were not conspicuous because they were "*nowhere near* the" button that the defendant argued constituted assent to the terms, but instead "buried in a hyperlink—which itself appears in small font—at the very bottom of the page." 2023 WL 6213583, at *6–7 (emphasis in original). As a result, a "user would have to scroll past three rows of customer reviews *and* a 'Finish Checkout' button . . . before he even gets a chance to see the Terms-of-Use link at all." *Id.* Moreover, the Court observed that "nowhere did Nexgen warn Valiente that by clicking that button, he was consenting to . . . Nexgen's Text Terms and

8

Terms of Use." *Id.* at *11. Walmart's check-out process could not be more different. The hyperlink to Walmart's Terms of Use was not buried under text at the bottom of the website. It was *directly above* the Place Order button. And it specifically advised purchasers that by placing an order, they were agreeing to the Terms of Use.

II.  **IN THE ALTERNATIVE, COUNT I SHOULD BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.**

Walmart explained in its opening brief that Count I should be dismissed because Plaintiff failed to exhaust his administrative remedy before pursuing a civil claim. Mot. at 14–16. Dismissal is compelled by the plain language of Florida's statute (FLA. STAT. § 215.26) and Eleventh Circuit precedent (*Fox v. Ritz-Carlton Hotel Co. L.L.C.*, 977 F.3d 1039, 1049 (11th Cir. 2020)). In response, Plaintiff simply ignores the 11th Circuit's decision in *Fox* and attempts to side-step the plain language of the statute by relying on seemingly incongruous language in a regulation (Rule 12A-1.014). Plaintiff attempts to justify this maneuver by selectively cherry-picking language from a recent decision from Florida's First District Court of Appeal to imply that it held that "a dealer is the proper party to seek a refund from the Department," Opp. at 12 (quoting *Oracle America, Inc. v. Fl. Dep't of Rev.*, 2024 WL 4965304 (1st DCA Dec. 4, 2024)). However, in context, the *Oracle* court was merely observing what the administrative code states—which the court **<u>actually rejected</u>** on the basis that it was inconsistent with the statute. *See Oracle*, 2024 WL 4965304 at *3 ("And so we see that, unlike the [Administrative] Code which says a dealer is the proper party to seek a refund from the Department, **Florida law only allows the taxpayer to receive a refund or to contest a refund denial**." (emphasis added)).

In that case, Oracle sought a refund of excess sales taxes that it collected from its customer and remitted to the Florida Department of Revenue. The Department of Revenue rejected its application for a refund on the grounds that it was not the taxpayer. The Court acknowledged that

9

there is "tension" between "Florida law and the Florida administrative code" because Florida Statute § 215.26(1) establishes the administrative procedure pursuant to which the *taxpayer* must submit an application for a refund to the Chief Financial Officer, whereas Rule 12A-1.014(4) purportedly requires that a "taxpayer who has overpaid tax to a dealer . . . must secure a refund of the tax from the dealer and not from the Department of Revenue." *Id.* at *2–3.

In view of this tension—which reflected "bureaucratic dysfunction in administering a refund process," *id.* at *3 n.4—the Court iterated that: "we adjudicate disputes based on the **language of Florida law, even where it may be in conflict with a promulgated rule**." *Id.* at *3 (emphasis added) (*citing Dep't of Bus. Regul. v. Salvation Ltd.*, 452 So. 2d 65, 66 (Fla. 1st DCA 1984) ("It is axiomatic that an administrative rule cannot enlarge, modify or contravene the provisions of a statute.")). That is on all-fours with the argument made in Walmart's Motion that where a rule is inconsistent with a statute "the statute must prevail and the said rule must be held to be ineffective." *See* Mot. at 19. The *Oracle* Court then proceeded to abide by the statute (Section 215.26) without regard for the contradictory language in Rule 12A-1.014. It held that "section 215.26 means what it says—that the person who paid the tax is the proper person or entity to be refunded," and therefore "the Chief Financial Officer may only issue a tax refund to" the customer who bore the sales tax and not to the dealer. *Id.* at *3–4. As a result, *Oracle* confirms that Section 215.26 provides an exclusive administrative procedure for **taxpayers** seeking refunds of allegedly improper sales taxes. Because Plaintiff failed to follow this procedure, his claim must be dismissed in accordance with the Eleventh Circuit's decision in *Fox*.

## CONCLUSION

For the foregoing reasons, the Court should grant Walmart's Motion and compel arbitration. In the alternative, if the Court declines to compel arbitration, it should dismiss Count I so that Plaintiff can pursue his claim for a refund through the required administrative process.

| | |
|---|---|
| Date: January 10, 2025 | Respectfully submitted,<br><br>/s/ *Bret R. Vallacher*<br>Bret R. Vallacher<br>FL Bar No. 1011122<br>MASSEY & GAIL LLP<br>1000 Maine Ave SW, Suite 450<br>Washington, D.C. 20024<br>(202) 780-0351 (telephone)<br>(312) 379-0467 (facsimile)<br>bvallacher@masseygail.com<br><br>Suyash Agrawal (Admitted Pro Hac Vice)<br>Paul Berks (Admitted Pro Hac Vice)<br>MASSEY & GAIL LLP<br>50 E. Washington Street, Suite 400<br>Chicago, Illinois 60602<br>(312) 283-1590 (telephone)<br>(312) 379-0467 (facsimile)<br>sagrawal@masseygail.com<br>pberks@masseygail.com<br><br>*Attorneys for Defendant Walmart, Inc.* |