UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 24-14308-CIV-CANNON

**MARK ROGOLINO**
individually and on behalf
of others similarly situated,

    Plaintiff,

v.

**WALMART, INC.**,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION

**THIS CAUSE** comes before the Court upon Defendant's Motion to Compel Arbitration, or in the Alternative, Dismiss Count I of the Amended Complaint (the "Motion") [ECF No. 17], filed on December 9, 2024. The Court has reviewed the Motion, including Defendant Walmart's Terms of Use attached thereto [ECF Nos. 17-1, 17-34], Plaintiff's Opposition [ECF No. 18], Defendant's Reply [ECF No. 21], and the full record. Following that review, Defendant's Motion is **GRANTED**. The case is **STAYED** pending the outcome of arbitration proceedings.

### BACKGROUND[1]

Plaintiff Rogolino, on behalf of himself and a putative class, brings an action against Walmart, Inc. for injunctive and declaratory relief to halt Walmart's alleged unlawful practice of charging Florida customers sales tax on delivery fees [ECF No. 13 ¶ 1]. This allegation is limited to those customers who had the option to pick up the items from a brick-and-mortar Walmart store

---

[1] The following facts are drawn from Plaintiff's Amended Complaint [ECF No. 13] and Defendant's Motion to Compel [ECF No. 17].

but chose to have the goods delivered instead [ECF No. 13 ¶ 3]. Plaintiff purchased an item from Defendant's website on November 24, 2023, and, despite having the option to pick up the item at a Walmart store or have it delivered, was charged a sales tax on the delivery fee [ECF No. 13 ¶¶ 17, 18]. Defendant maintains, and Plaintiff does not dispute, that when Plaintiff made this purchase from Defendant, Defendant's online check-out process featured the following text and button:

> By placing this order, you agree to our Privacy Policy and Terms of Use.
>
> Place order $27.43

[ECF No. 17-1 p. 9]. At the time of Plaintiff's purchase, the screen above would direct a buyer to the 2023 version of Defendant's Terms of Use (the "Terms") [ECF No. 17-2; 17-3], which includes three relevant clauses: the Mandatory Arbitration Provision, the Arbitration Agreement, and the Class Action Waiver [ECF No. 17-3 ¶ 20]. On the first page of the Terms of Use, the Mandatory Arbitration Provision reads: "IMPORTANT: THESE TERMS OF USE CONTAIN A MANDATORY ARBITRATION PROVISION THAT, AS FURTHER SET FORTH IN SECTION 20 BELOW, REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES.. . . ." [ECF No. 17-3 p. 2]. Within the arbitration-specific section of the Terms, the Arbitration Agreement states, in pertinent part: "EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT, YOU AGREE THAT ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART, INCLUDING ANY PRODUCTS OR SERVICES OFFERED OR SOLD BY WALMART OR THE WALMART

ENTITIES, WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION . . . ." [ECF No. 17-3 ¶ 20]. And lastly, the Class Action Waiver states, in pertinent part: "YOU AND WALMART AGREE THAT ANY ARBITRATION REQUIRED BY THE ARBITRATION AGREEMENT WILL TAKE PLACE ON AN INDIVIDUAL BASIS" [ECF No. 17-3 ¶ 20(b)].

## PROCEDURAL HISTORY

Plaintiff filed the underlying action in the Nineteenth Judicial Circuit in and for St. Lucie County, Florida in July 2024 [ECF No. 1 p. 2]. Defendant timely removed the action to this Court, relying on the Class Action Fairness Act, 28 U.S.C. § 1332(d) [ECF No. 1 p. 3]. Shortly thereafter, Defendant moved to compel arbitration [ECF No. 12]. Plaintiff responded by filing a first amended complaint (the "Complaint") [ECF No. 13], after which Defendant filed the instant motion—renewing its Motion to Compel Arbitration, or in the alternative, to Dismiss Count I for failure to exhaust administrative remedies [ECF No. 17]. The Motion is ripe for review.

## LEGAL STANDARDS

The Court "treat[s] motions to compel arbitration similarly to motions for summary judgment," viewing the facts in the light most favorable to the nonmovant. *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215 n.3 (11th Cir. 2021); *see Bazemore v. Jefferson Cap. Sys.*, LLC, 827 F.3d 1325, 1333 (11th Cir. 2016) ("We agree with our sister circuits that a summary judgment-like standard is appropriate and hold that a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement.").

The Federal Arbitration Act ("FAA") governs the validity of an arbitration agreement. *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329 (11th Cir. 2014) (citation omitted). The FAA provides that a written agreement to arbitrate a controversy "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When one party has failed, neglected, or refused to comply with an arbitration agreement, the FAA requires the federal court to compel arbitration upon proper motion. *See id.* § 4; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (observing that the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed") (emphasis in original). The FAA creates a "presumption of arbitrability" such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115–16 (11th Cir. 2014); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (observing that the FAA embodies a "liberal federal policy favoring arbitration agreements").

Although the FAA governs the validity of an arbitration agreement, "state law governs the interpretation and formation of such agreements." *1 Emps. Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) (citing *Perry v. Thomas*, 482 U.S. 483 (1987)). Florida law governing arbitration agreements, agreed to within the context of internet transactions, recognizes two common presentations: "browsewrap" and "clickwrap agreements." *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. Dist. Ct. App. 2018). "A 'browsewrap' agreement occurs when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process. *Id.* "A 'clickwrap' agreement occurs when a website directs a purchaser to the terms and conditions

4

of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions." *Id*. The purchaser can complete the transaction without visiting the page containing the terms and conditions." *Id*.

Browsewrap agreements, like the one at issue here, are generally enforceable when "the hyperlink to the terms and conditions is conspicuous enough to place the user on inquiry notice." *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 765 (Fla. Dist. Ct. App. 2017).

## DISCUSSION

There is one, determinative point of contention between the parties: whether, accepting Plaintiff's allegations as true, and construing the record in the light most favorable to Plaintiff, Defendant's Terms are sufficiently conspicuous as to place Plaintiff on inquiry notice.[2] Plaintiff argues that Defendant's Terms are insufficiently prominent to put him, and other consumers, on notice because Defendant "opted for a design [without color or capitalized letters] that hid the hyperlink" [ECF No. 18 p. 12]. Defendant takes the opposite view, arguing that the underlined hyperlink to the Terms, as shown on the checkout screen, puts Plaintiff on inquiry notice [ECF No. 21]. Defendant also characterizes Plaintiff's position as imposing a "bright-line rule that a hypertext-linked agreement is not enforceable unless the link's font is blue" [ECF No. 21 p. 5].

In deciding whether browsewrap agreements like Defendant's are binding, courts applying Florida law ask whether the notice is "conspicuous enough to put a reasonably prudent person on inquiry notice." *Massage Envy Franchising, LLC v. Doe*, 339 So. 3d 481, 484 (Fla. Dist. Ct. App. 2022) (quoting *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. Dist. Ct. App. 2017)). "Whether a party received reasonable notice is a fact-intensive inquiry, and for internet

---

[2] Plaintiff does not dispute that his claims fall within the scope of the arbitration provision [ECF No. 18 p. 12].

transactions "the design and content of the relevant interface" are especially relevant." *Eglin Fed. Credit Union v. Baird*, No. 1D2023-1866, 2024 WL 3956764, at *3 (Fla. Dist. Ct. App. Aug. 28, 2024) (quoting *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 75 (2d Cir. 2017)). When assessing the design and content of the relevant interface, courts look to the position of the terms vis á vis the entire webpage, *Vitacost.com, Inc.,* 210 So. 3d at 765, whether the terms are bolded or in upper-case lettering, *M.Z. v. Carnival Corp.*, 239 So. 3d 756, 757 (Fla. Dist. Ct. App. 2018), and whether the user could make a purchase without the terms button in their line of sight, *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1304 (M.D. Fla. 2018).

Defendant's Terms are sufficiently conspicuous to place Plaintiff, and other members of the putative class, on inquiry notice such that the arbitration agreement between the parties is enforceable. The position of Defendant's Terms hyperlink is directly above the "Place Order" button—it cannot be missed when a user makes a purchase [ECF No. 17-1 p. 9; *see supra* p.2]. *See Temple*, 360 F. Supp. 3d at 1304 (holding that plaintiff was on notice where the terms and conditions hyperlink was located below the "Get a Quote" button). Although it is not in capital letters or blue font, the location of the Terms makes it so that a reasonable consumer could not checkout without seeing it. *Id.*; *see Eglin Fed. Credit Union*, 2024 WL 3956764, at *3 (emphasizing the importance of design in assessing conspicuousness). The Court declines to conclude that a lack of blue font and capitalization overrides the positioning and clarity of the Terms. Plus, the Terms are underlined, making it clear to the average internet user that they are hyperlinks, and the contents of the Terms related to arbitration are in capital letters. *See Derriman v. Mizzen & Main LLC*, 710 F. Supp. 3d 1129, 1140 (M.D. Fla. 2023) (holding that Plaintiff was on notice, notwithstanding a lack of blue font, because "the 'Terms' and 'Privacy' links are underlined, indicating that they are hyperlinks").

CASE NO. 24-14308-CIV-CANNON

Defendant's Motion [ECF No. 17] is **GRANTED**. The parties shall proceed to arbitration under the terms of the Arbitration Agreement, subject to the reporting requirements listed below.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Compel Arbitration [ECF No. 17] is **GRANTED.**

2. This action is **STAYED** and shall be **ADMINISTRATIVELY CLOSED** pending completion of arbitration pursuant to the terms of the Arbitration Agreement in this case.

3. Every **ninety (90) days** following the date of this Order, the parties are directed to jointly file status reports apprising the Court of the status of the dispute resolution process.

4. Any notice of settlement must be jointly signed.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 4th day of February 2025.

_____
**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record